UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| DARRIUS COLE, | ) |
| | ) |
| Plaintiff, | ) Jury Demanded |
| | ) |
| v. | ) Case No. _____ |
| | ) |
| TENNESSEE VALLEY AUTHORITY | ) |
| BOARD OF DIRECTORS, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

Plaintiff sues Defendant and shows the Court as follows:

### I. JURISDICTION

1. The jurisdiction of this Court is invoked by Plaintiff pursuant to 42 U.S.C. §2000e-5, 42 U.S.C. §2000e-16, and 28 U.S.C. §1331, to secure protection and redress for the deprivation of rights granted by the Rehabilitation Act, 29 U.S.C. §791, and Title VII of the Civil Rights Act, 42 U.S.C. §2000e-16, providing for legal and injunctive relief against disability and race discrimination in federal employment.

2. The acts complained of herein took place in Hamilton County, Tennessee. Thus, venue is proper under 28 U.S.C. §1391(b)(2).

### II. NATURE OF PROCEEDING

3. This is a proceeding for back pay and benefits due Plaintiff; for compensatory damages; for injunctive relief requiring Defendant to cease its discriminatory practices; prejudgment interest and attorney fees; and for such additional damages and costs as may be necessary to effectuate the purposes of the Rehabilitation Act and Title VII, and to make Plaintiff whole.

## III. THE PARTIES

4. At all times relevant to this lawsuit, Plaintiff was a resident of Hamilton County, Tennessee.

5. Defendant Tennessee Valley Authority ("TVA") is an executive branch corporate agency and instrumentality of the United States of America. The head of TVA is its corporate board of directors, which is the proper party defendant to be sued pursuant to 42 U.S.C. §2000e-16(c) and 16 U.S.C. §831a. TVA conducts business and employs many individuals in Hamilton County, Tennessee.

6. As a federal agency, TVA is subject to the Rehabilitation Act, 29 U.S.C. §701 *et seq.*, including the Act's prohibitions of disability discrimination, 29 U.S.C. §791, which provision also expressly adopts the provisions of Title I of the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq*. TVA is also subject to Title VII's prohibition of race discrimination, 42 U.S.C. §2000e-16.

## IV. FACTUAL BASES OF PLAINTIFF'S CLAIMS

7. Plaintiff is African American.

8. Plaintiff suffers from a gastrointestinal disorder known as Irritable Bowel Syndrome ("IBS"). Plaintiff's IBS is a permanent physiological impairment, for which he has been diagnosed and has received – and continues to receive – treatment and medication. Plaintiff's IBS substantially limits the normal functioning of digestion and his ability to control his bowels.

9. In March 2018, TVA hired Plaintiff to undergo training as part of the Nuclear Student Generating Plant Operator ("NSGPO") program at TVA's Sequoyah Nuclear Plant ("SQN") in Hamilton County, Tennessee. Upon completion of the two-year NSGPO program, Plaintiff would be qualified to perform the role of a non-licensed Assistant Unit Operator.

10. TVA hired 21 individuals to begin as trainees in the NSGPO program at SQN in the spring of 2018. Of the 21 trainees hired, only one was African American (Plaintiff), and only one had a disability (Plaintiff).

11. The NSGPO program at SQN is overseen by the Local Joint Training Subcommittee ("LJTS"), which is comprised of members of management, human resources, and the union. The LJTS has authority to issue discipline to a trainee and to recommend that a trainee be removed from the program.

12. Overall, Plaintiff's academic performance in the NSGPO program was satisfactory.

13. During the first several months of the NSGPO program, Plaintiff missed classes and/or was late to class because of IBS-related reasons, including medical appointments and emergencies. On several occasions, because of IBS symptoms, Plaintiff was present at the training facility – but in the bathroom – when morning attendance was taken.

14. In May 2018, Plaintiff advised John Grace (Operations Training Supervisor), Stacy Harvey (Lead Instructor) and David Williams (union steward and member of the LJTS) of his IBS and the problems that his IBS was causing related to attendance. Harvey instructed Plaintiff to report to TVA's on-site medical facility for examination.

15. The TVA medical department advised Grace and Harvey to accommodate Plaintiff's IBS by allowing him to sit near the classroom door and to allow frequent bathroom breaks.

16. Without warning, on June 26, 2018, Plaintiff received a letter of remediation from Grace. According to NSGPO program rules, a remediation is a disciplinary tool designed to address academic deficiencies. However, Plaintiff's June 2018 remediation was for attendance.

17. Issuing remediation for attendance was unprecedented; it had never previously happened.

18. Alarmingly, the June 2018 remediation reflected absences and tardies that were attributable to Plaintiff's IBS.

19. Lead Instructor Harvey overly scrutinized and documented Plaintiff's attendance record, entering multiple notations (referred to as a Condition Report or "CR") about Plaintiff's attendance into a TVA database. Several notations were completely inaccurate and gave the false impression that Plaintiff had not followed proper protocol in reporting absences or tardies.

20. Plaintiff always followed proper protocol in reporting absences or tardies to management and his instructors. Furthermore, in reporting absences or tardies, he always gave notice that they were attributable to his IBS.

21. While Plaintiff was issued a remediation for alleged poor attendance, a similarly-situated comparator (Ian Hamilton – white, no disability) had more absences and tardies than Plaintiff during the first three months of the NSGPO program. Despite his poor attendance record, Hamilton was not issued a remediation in June 2018.

22. Remediation was a serious disciplinary measure. According to NSGPO program rules, two remediations result in automatic removal of the trainee from the program.

23. After receiving the June 2018 remediation, Plaintiff complained to Training Supervisor Grace and Grace's supervisor (Kevin Michael) that he was being discriminated against based upon his disability and race. Additionally, Plaintiff complained to union steward Williams that he was being singled out for unfair treatment on the basis of his disability and race.

24. In early October 2018, Williams advised Plaintiff that the LJTS was recommending a second remediation because Plaintiff had been ten minutes late returning from lunch break for

an exam review in mid-September. Plaintiff was late for the exam review because he was unaware of a last-minute time change. Fellow trainee Chris Hixson was also late for the exam review because he (like Plaintiff) did not receive the late notification of the time change. Hixson, however, received no reprimand. Both Plaintiff and Hixson explained this justification to Williams, but to no avail. Hixson further explained this justification to Training Superintendent Kevin Michael (who was also a member of the LJTS), again to no avail.

25. On or about October 16, 2018, Plaintiff received a letter signed by Grace informing him that his removal from the NSGPO program and termination of employment had been approved and would become effective in 30 days. TVA terminated Plaintiff's employment on November 16, 2018.

26. Prior to the LJTS's recommendation to remove Plaintiff from the program, Williams complained about Plaintiff's pattern of disability-related absences. Williams expressed concern that once Plaintiff completed the NSGPO program and became a qualified AUO in the plant, Williams believed that Plaintiff allegedly would not be "reliable" because of his disability-related absences.

27. On or about October 16, 2018, comparator trainee Ian Hamilton (white, no disability) finally was issued a remediation for poor attendance. Since June 2018, Hamilton's attendance continued to be poor, as he often was tardy without prior approval, for reasons not related to any disability.

28. After Plaintiff's termination, Hamilton continued to have poor attendance. In the fall of 2019, management recommended a second remediation and removal of Hamilton from the NSGPO program. However, Williams actively opposed efforts of the other LJTS members to

5

remove Hamilton. When asked why Hamilton's situation was any different than Plaintiff's situation, Williams stubbornly replied, "It just is."

29. Only after Plaintiff's EEO investigation was reopened for the purpose of reviewing whether Hamilton was being treated more favorably than Plaintiff, was Hamilton issued a proposed notice of termination and removal from the NSGPO program. Even then, Hamilton was given the opportunity to resign in lieu of termination (which he did). Plaintiff was not given that opportunity.

## V. CAUSES OF ACTION

Count 1: Disability Discrimination

30. Title I of the Americans with Disabilities Act ("ADA") prohibits an employer from discriminating against a qualified individual on the basis of disability in regard to personnel actions. 42 U.S.C. §12112(a). The standards of Title I of the ADA are incorporated by reference into the Rehabilitation Act. 29 U.S.C. §791(f).

31. Plaintiff's irritable bowel syndrome (IBS) (hereinafter referred to as "disability") constitutes a disability as that term is defined within the ADA inasmuch as Plaintiff's disability substantially limits the normal functioning of his digestive system and bowels; that he had a record of disability; or in the alternative, that Plaintiff was regarded as having a disability.

32. TVA unlawfully discriminated against Plaintiff because of his disability by subjecting Plaintiff to remediation efforts, removal from the NSGPO program, and termination of Plaintiff's employment, in violation of 29 U.S.C. §791. But for[1] Plaintiff's disability, TVA would

---

[1] Section 501 of the Rehabilitation Act borrows the causation standard from the Americans with Disabilities Act of 1990. 29 U.S.C. §791(g). The "sole cause" standard under §504 of the Rehabilitation Act does not apply to claims brought under §501 of the Rehabilitation Act; rather, the ADA causation standard incorporated by 29 U.S.C. §791(g) governs claims brought under §501. *Pinkerton v. Spellings*, 529 F.3d 513, 516–17 (5th Cir. 2008). "But-for" causation is the standard that the Sixth Circuit applies under the ADA. *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 321 (6th Cir. 2012).

not have taken the aforementioned adverse employment actions against Plaintiff.

33. Title I of the ADA prohibits an employer from refusing to make reasonable accommodations to the known mental limitations of an otherwise qualified individual with a disability unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of the business. 42 U.S.C. §12112(b)(5)(A). The ADA's reasonable accommodation requirement is incorporated by reference into the Rehabilitation Act. 29 U.S.C. §791(g).

34. TVA was fully aware that Plaintiff's absences and tardies were related to his disability. Plaintiff frequently requested that his disability-related absences and tardies be excused. By using Plaintiff's disability-related absences and tardies as justification for subjecting Plaintiff to remediation efforts, removal from the NSGPO program, and termination of Plaintiff's employment, TVA unreasonably refused Plaintiff's accommodation requests to excuse his absences and tardies.

Count 2: Race Discrimination

35. Title VII prohibits an employer from discriminating against an employee on the basis of race in regard to personnel actions, including discipline, removal from employment duties, and termination. 42 U.S.C. §2000e-16(a).

36. By subjecting Plaintiff to remediation efforts, removal from the NSGPO program, and termination of Plaintiff's employment, based on race, TVA violated Title VII.

Count 3: Retaliation

37. By subjecting Plaintiff to remediation efforts, removal from the NSGPO program, and termination of Plaintiff's employment, based upon his complaints of disability and race discrimination, TVA engaged in unlawful retaliation in violation of the Rehabilitation Act and Title VII.

## VI. EXHAUSTION OF ADMINISTRATIVE REMEDIES

38. On February 4, 2019, Plaintiff timely filed a formal complaint of discrimination and retaliation with TVA's Equal Opportunity Compliance (EOC) department, which complaint was assigned EO File Number TVA-2019-0001. On March 16, 2020, TVA issued a Final Agency Decision. Plaintiff therefore timely brings this action pursuant to 42 U.S.C. §2000e-16(c) and 29 C.F.R. §1614.407(b).

## VII. DAMAGES

39. As a result of the wrongful actions of TVA as described above, Plaintiff has suffered both emotionally and financially. In particular, Plaintiff experienced emotional pain and mental anguish as a result of TVA's unlawful actions described herein. In addition, Plaintiff lost and will continue to lose wages, employee benefits, and the chance at advancement within TVA because of TVA's unlawful actions. All of these damages were proximately caused by the aforementioned unlawful actions of TVA.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays as follows:

a. That the Court issue and serve process upon TVA and require TVA to answer within the time prescribed by law;

b. That upon the hearing of this cause, Plaintiff be awarded judgment for damages for lost wages and employee benefits which he has lost from the date of TVA's discriminatory actions;

c. That the Court issue an injunction requiring TVA to reinstate Plaintiff as a trainee to the NSGPO program, or in the alternative, to award front pay in lieu thereof;

d. That Plaintiff be awarded additional compensatory damages, including damages for emotional pain and mental anguish, pursuant to 42 U.S.C. §1981a;

e. That Plaintiff be awarded attorney fees, the costs of this action, litigation expenses, and prejudgment interest, pursuant to 29 U.S.C. §794a and 42 U.S.C. §2000e-5;

f. That Plaintiff be awarded such other and further relief as the Court deems proper in order to make Plaintiff whole under the Rehabilitation Act and Title VII, including any provisions that are incorporated thereto or therein; and

g. Plaintiff demands a jury to try all claims and issues triable by a jury, pursuant to, but not limited to, 42 U.S.C. §1981a(c).

**MIKEL & HAMILL PLLC**

By: s/ *Doug S. Hamill*
Doug S. Hamill, BPR No. 22825
Attorney for Plaintiff
620 Lindsay Street, Suite 200
Chattanooga, TN 37403
Tel: (423) 541-5400
Fax: (423) 541-5401
dhamill@mhemploymentlaw.com